*52 ORDER (Petition Granted in Part)
TODD R. MATHA, Chief Judge.
INTRODUCTION
This case concerns whether the parent, Taryn Power Greendeer, can access monies on behalf of her minor child, S.B.G., DOB 04/21/96, from the Children’s Trust Fund (hereinafter CTF) to pay for costs associated with private school tuition. The Court employs the standard enunciated in the Per Capita Distribution Ordinance (hereinafter Per Capita Ordinance), 2 HCC § 12.8c to assess the merit of the parent’s request. The Court partially grants the request of the petitioner due to a failure to demonstrate exhaustion of an available state entitlement.
PROCEDURAL HISTORY
The petitioner, Taryn Power Greendeer, initiated the current action by filing the January 21, 2009 Petition for Release of Per Capita Distribution (hereinafter Petition). Consequently, the Court issued a *53 Summons accompanied by the above-mentioned Petition on January 23, 2009, and served the documents upon the respondent’s representative, Ho-Chunk Nation Department of Justice (hereinafter DOJ),[1] by personal service as permitted by HCN R, Civ. P. 5(C)(1). The Summons informed the respondent of the right to file an Answer within twenty (20) days of the issuance of the Summons pursuant to HCN R. Civ. P. 5(A)(2). The Summons also cautioned the respondent that a default judgment could result from failure to file within the prescribed time period.
The respondent, by and through DOJ Attorney Wendi A. Hiding, filed a timely Answer on February 11, 2009, asking the Court to schedule a fact-finding hearing. The Court mailed Notice(s) of Hearing to the parties on February 12, 2009, informing them of the date, time and location of a Fact-Finding Hearing. The Court convened the Hearing on February 25, 2009 at 10:00 a.m. CST. The following parties appeared at the Fact-Finding Hearing: Taryn Power Greendeer, petitioner, and DOJ Attorney Wendi A. Huling, respondent’s counsel. At the Hearing, the Court, upon respondent’s request, required the petitioner to supply additional documentary evidence. Fact-Finding Hr’g (LPER at 11, Feb. 25, 2009, 11:33:52 CST). On March 11, 2009, the respondent filed an amended pleading (hereinafter Amended Answer), ineluding several attachments.
APPLICABLE LAW
PER CAPITA DISTRIBUTION ORDINANCE, 2 HCC § 12
Subsec. 8. Minors and Other Legal Incompetents.
a. The interests of minors and other legally incompetent Members, otherwise entitled to receive per capita payments, shall, in lieu of payments to such minor or incompetent Member, be disbursed to a Children’s Trust Fund which shall establish a formal irrevocable legal structure for such CTFs approved by the Legislature as soon after passage of this Ordinance as shall be practical, with any amounts currently held by the Nation for passage for the benefit of minor or legally incompetent Members, and all additions thereto pending approval and establishment of such formal irrevocable structure, to be held in an account for the benefit of each such Member-beneficiary under the supervision of the Trial Court of the Nation. Trust assets of such CTFs shall be invested in a reasonable and prudent manner, which protects the principal and seeks a reasonable return.
b. Education Criterion.
(1) The trust assets of each such account maintained for a minor shall be disbursed to the Member-beneficiary thereof upon the earlier of (i) said Member-beneficiary meeting the dual criteria if [sic ] (a) reaching the age of eighteen (18) and (b) producing evidence of personal acquisition of a high school diploma to the Department of Enrollment (HSED, GED or any similar substitute shall not be acceptable), or (ii) the Member reaches the age of twenty-five (25); provided that this provision shall not operate to compel disbursement of funds to Members legally determined to be incompetent. In the event a Member, upon reaching the age of eighteen (18) does not produce proof of personal acquisition of a high school diploma, such Member’s per capita funds shall be retained in the CTF account and any and *54 all per capita distributions payable to said Member after reaching age 18 will be added to such fund and not be paid to the Member[,] and the CTF account and [sic ] shall be held on the same terms and conditions applied during the Member-beneficiary’s minority until the earliest to occur: (1) the Member produces the required diploma; (2) the Member reaches the age of twenty-five (25); or (3) the Member is deceased.
c. Funds in the CTF of a minor or legally incompetent Member may be available for the benefit of a beneficiary’s health, education, and welfare when the needs of such person are not being met from other Tribal funds or other state or federal public entitlement programs, and upon a finding of special need by the Ho-Chunk Nation Trial Court. In order to request such funds, the following provisions apply:
(1) A written request must be submitted to the Trial Court by the beneficiary’s parent or legal guardian detailing the purpose and needs for such funds.
(2) The parent or legal guardian shall maintain records and account to the Trial Court in sufficient detail to demonstrate that the funds disbursed were expended as required by this Ordinance and any other applicable federal law.
(3) Any other standards, procedures, and conditions that may be subsequently adopted by the Legislature consistent with any applicable federal law shall be met. HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 5. Notice of Serv ice of Process.
(A) Definitions.
2. Summons—The official notice to the party informing him/her that he/she is identified as a party to an action or is being sued, that an Answer is due in twenty (20) calendar days (See HCN R. Civ. P. 6) and that a Default Judgment may be entered against them if they do not file an Answer in the prescribed time. It shall also include the name and location of the Court, the case number, and the names of the parties. The Summons shall be issued by the Clerk of Court and shall be served with a copy of the filed Complaint attached.
(C) Methods of Service of Process.
1. Personal Service. The required papers are delivered to the party in person by the bailiff, or when authorized by the Court, a law enforcement officer from any jurisdiction, or any other person not a party to the action who is eighteen (18) years of age or older and of suitable discretion.
Rule 27. The Nation as a Party.
(A) Actions involving Minor or Adult Incompetents. When the Nation files an action concerning a minor or a legally incompetent adult, the Complaint will identify the following as parties: 1) matters with minors as parties shall be filed using only initials and date(s) of birth or matters with incompetents as parties may be filed using their actual names; 2) the parents or legal guardians by names and residence(s); and 3) any other person having physical custody of the child/children by name, relationship to the child/children and residence.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a *55 party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C)Motion to Modify. After the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rules of Appellate Procedure.
FINDINGS OF FACT
1. The minor child, S.B.G., DOB 04/21/96, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A006267.
2. The petitioner and custodial parent of the minor child, Taryn Power Green-deer, is a nonmeinber, and resides at 522 South Main Street, Viroqua, WI 54665.
*56 3. The respondent, Ho-Chunk Nation Office of Tribal Enrollment, is a division within the Ho-Chunk Nation Department of Heritage Preservation located on trust lands at Ho-Chunk Nation Headquarters, W9814 Airport Road, P.O. Box (307, Blaek River Falls, WI. See Dep’t of Heritage Pres. Establishment & Org. Act of 2001, § 6.5c.
4. The petitioner’s family residence was destroyed by fire on March 8, 2008. LPER at 6, 10:17:10 CST. Prior to the fire, S.B.G. attended Westby Area School District as a sixth grader. Id. at 8, 10:22:09 CST. The subsequent relocation to Viroqua placed S.B.G. in the Viroqua Area School District, but rather than attend public school, S.B.G. stated a preference of attending Pleasant Ridge Waldorf School (“PRWS”) located at 431 East Court Street, Viroqua, WI 54665. Id. at 9, 10:22:44 CST.
5. S.B.G. earlier attended PRWS kindergarten and socialized with students of PRWS while residing in Westby. S.B.G. did not remain at PRWS since she expressed a desire to attend public school. Id., 10:22:24 CST. The petitioner explained the rationale for returning to PRWS as follows:
One day in the car when I asked her if she wanted to go to the Viroqua School instead of the Westby School, she asked me if she could go to the Waldorf School, and, I realized that actually most of the people she’d grown up with socially, their kids went there, so she knew a lot of the children, and it was sort of like a surrogate home. It was a home away from home.... I thought it just seemed like a supportive community for her to be in, rather than put her in a whole new public school where she didn’t know anyone, and had to deal with another new factor in her life. Then, of course, I mean I personally was thrilled just because of their approach to education....
Id., 10:24:48 CST.
6. S.B.G. expressed her desire to attend PRWS in the following words:
I think Pleasant Ridge is a better way to learn than the area public schools. The teachers and the students, I think, have a better and closer relationship. They also teach us to have more responsibility by not reminding us everyday of our homework like most public schools have you do. Another thing is that each grade only has one teacher and the grades are not that big. So we don’t really have cliques or anything!,] we’re just all friends.... I really feel that this school is much better than others and has a very excellent educational course.... I think I have already learned a ton more at Pleasant Ridge than I ever would have at a public school.
Am. Answer, Attach. 4 at 1-2.
7. S.B.G. never attended classes in the Viroqua Area School District.
8. The petitioner requested a release of CTF monies to satisfy the outstanding tuition balance at PRWS for the present academic year, and a later allocation to satisfy the 2009-10 academic year tuition after deducting an anticipated tribal contribution. Id. at 10, 10:26:54 CST. However, the petitioner presently requests the following:
Pleasant. Ridge Waldorf School $6,800.00 (2008-09
431 East Court Street tuition costs)
Viroqua, WI 64666
Am. Answer, Attach. 1.
9. The Ho-Chunk Nation Department of Education typically provides a Pre-K through 12 grant in the amount of $2,000.00 per student, but, due to an alleged filing error, S.B.G. received only the amount of $614.37 on January 9, 2009, *57 which was mailed directly to PRWS.[2] Am. Answer, Attach. 2-3, 22; LPER at 5, 10:10:42 CST.
10. Maureen Karlstad, Class Seven Teacher, expressed her reasoning for wanting S.B.G. to remain at PRWS, stating “I think it is important for [S.B.G.] to stay here with us. She is doing well in an environment that suits her. I think everyone needs a Waldorf Education and for [S.B.G.,] I think that being here has been good for her on many levels.” Am, Answer, Attach. 5.
11. PRWS offers instruction through the Eighth Grade after which students would need to enroll elsewhere, including within the Viroqua Area School District. Id., Attach. 8.
12. The respondent recommends granting the petitioner’s request. Id. at 1.
13. As of January 1, 2009, S.B.G. had an amount of $114,706.56 deposited in the CTF account. Id,
DECISION
The Court applies a four-part test when determining the circumstances under w'hich it would grant a release of monies from the CTF account of a minor tribal member. See In the Interest of Minor Child(ren): V.D.C., DOB 10/03/84, et al., by Debra Crowe v. HCN Office of Tribal Enrollment, CV 00-25 (HCN Tr. Ct., Apr. 6, 2001) at 7 (citing In the Interest of Minor Child: S.D.S., DOB 04/25/83, by Michelle R. DeCora v. HCN Office of Tribal Enrollment, CV 00-35 (HCN Tr. Ct., May 4, 2000) at 7). The Court derived the four-part test from language appearing in the Per Capita Ordinance, § 12.8c. Crowe at 7. hirst, the Court may only grant a release for the benefit of a beneficiaiy’s health, education, or welfare. Second, any such benefit must represent a necessity, and not a want or desire. Third, the parent or guardian must demonstrate special financial need. Finally, the petitioner must provide evidence of exhaustion of tribal funds and public entitlement programs. M at 8.
The Court closely examines each Petition for Release of Per Capita Distribution in fulfillment of its statutory obligation to supervise the CTF accounts. Per Capita Ordinance. § 12.8a. The Court performs this supervision against the backdrop of federal enabling legislation. Specifically, the Indian Gaming Regulatory Act requires that parents receive per cap-ita monies “in such amounts as may be necessary for the health, education, or welfare, of the minor.” Indian Gaming Regulatory Act, 25 U.S.C. § 2710(b)(3)(C) (emphasis added). The Court has focused upon this limitation in developing its case law, announcing basic principles and rudimentary understandings that have guided it through a variety of requests.
Foremost among these understandings is the recognition that petitioners are “asking that the Court do something very unusual and extraordinary, i.e., take money from children and give it to the parents.” In the Interest of the Minor Children: M.C., DOB 04/09/89, et al., by Myra Cunneen v. HCN Dep’t of Enrollment, CV 99-83 (HCN Tr. Ct., Jan. 21, 2000) at 3. The Court rightfully practices restraint when asked to serve as this instrumentality. The Court reasons that “no matter what the financial plight of the parents, the ordinary and usual expenses *58 for raising children should not be shifted to the children.” Id. at 6.
Only a verifiable claim of poverty can justify a parent’s failure to provide a child’s basic necessities of life: “adequate food, clothing, shelter, medical care, education [and] supervision.” Hocak Nation Children and Family Act, 4 HCC § 3.5bb. The Court, however, shall not relieve a parent of this responsibility if the impoverished condition of the family derives from poor parental decisions. The Court will not elevate a child to the status of provider as a consequence of regrettable choices made by the parent. Crowe at 13-14. “When a person becomes a parent, that parent inherently accepts the responsibility to provide for the health, education and welfare for that child or children.... As a parent, [he or she] has inherently accepted these financial obligations by bringing ... children into this world.” In the Interest of Gary Alan Funmaker, Sr. v. Ho-Chunk Nation, CV 96-39 (HCN Tr. Ct., Oct. 18, 1996) at 7.
Accordingly, the Court has only granted CTF releases for food, clothing, shelter or medical care in the most egregious of circumstances. See In the Interest of Minor Child: D.A.S., DOB 10/14/87, by Larry Swan v. HCN Office of Tribal Enrollment, CV 00-96 (HCN Tr. Ct., Dec. 18, 2000) (insufficient Social Security Income to satisfy clothing needs of twelve (12) year old child cared for by terminally ill single parent); In the Interest of Minor Child: D.M.S. T., DOB 07/01/83, by Roxanne Tallmadge-Johnson v. HCN Office of Tribal Enrollment, CV 00-14 (HCN Tr. Ct., Apr. 13, 2000) (inability of Medical Assistance to cover a sports-related injury of a teenager residing in a household with eleven (11) other minor children). For other requests relating to health, education or welfare, the Court has distinguished between cases where the child receives the direct, tangible benefit (orthodontics) as opposed to those where the request proves beneficial to the entire family (automobiles). The Court is certainly less inclined to grant the latter type of requests due to the presence of this distinction. Also, the Court typically will require the parent(s) to offer a greater financial contribution depending upon the circumstances.
The Court must determine whether the petitioner has satisfied the statutory standard for securing a release of CTF monies in the present case. Per Capita Ordinance, § 12.8c. A component part of the standard requires the petitioner to demonstrate that “the needs of [the minor] are not being met from other Tribal funds or other state or federal public entitlement programs.” Id. (emphasis added). Consequently, a petitioner seeking CTF monies for private schooling purposes must establish that available public schooling does not meet the minor’s educational needs. A failure to do so will result in a denial of the request. See, e.g., In the Interest of Minor Child: G.N., DOB 02/25/00, by Julie Nakai v. HCN Office of Tribal Enrollment, CV 07-62 (HCN Tr. Ct., Nov. 9, 2007) at 6-7, 9-10 (holding that the petitioner could not simply claim the existence of unidentified studies purportedly indicting a state’s poor elementary educational system); In the Interest of Minor Children: D.L., DOB 05/27/91, et al. by Doracita Lonetree v. HCN Office of Tribal Enrollment, CV 06-26 (HCN Tr. Ct., June 16, 2006) at 6, 11-12 (deeming mere allegations of a poor student to teacher ratio as insufficient to demonstrate exhaustion). In each referenced case, the Court noted that “casting unsubstantiated aspersions at a public institution should not suffice for the purpose of having a minor satisfy educational costs.” Lonetree, CV 06-26 at 11.
*59 The Court must presume that the educational needs of a minor are reasonably being met by means of a free state resource. For example, in the State of Wisconsin, “[t] he legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of 4 and 20 years.” Wis. Const, art. X, § 3. The petitioner, therefore, must effectively demonstrate otherwise through testimony and documentary evidence. The Court will not release CTF monies based upon an educational preference as opposed to an educational need. See, e.g., In the Interest of Minor Children: Z.T.E., DOB 12/18/01, et al. by David Espinoza v. HCN Office of Tribal Enrollment, CV 08-30-31 "(HCN Tr. Ct., Aug. 26, 2008) at 6, 9-10 (preferring the Montessori approach toward learning).
However, the Court has granted a few private schooling requests. The Court has granted a request for attendance at St. John’s Northwestern Military Academy in Delafield, WI, since the minor child had been expelled from public school and could not return to a state academic institution. In the Interest of Minor Child: B.K. W.B., DOB 02/10/91, by Cara Lee Murphy v. HCN Ofice of Tribal Enrollment, CV 06-67 (HCN Tr. Ct., Jan. 19, 2006) at 6-7, 10-11 (finding an absence of an available state educational resource); see also In the Interest of Minor Child: T.K., DOB 06/06/90, by Sara WhiteEagle v. HCN Office of Tribal Enrollment, CV 07-07 (HCN Tr. Ct., Mar. 26, 2007) at 6-8, 11-12 (permitting funding for a single academic year at Wentworth Military Academy & Junior College in Lexington, MO, due to the minor’s failing grades in public school coupled with demonstrated academic improvement in the private setting.) In relation to the latter case, the Court noted that it did “not necessarily wish to equate expulsion with exhaustion,” but that a close question emerged since “[t]he petitioner presented no facts showing [Reedsburg Area High School] culpable for the minor child’s abysmal academic record.” Id. at 11-12. Regardless, the High School Principal commented favorably upon the decision to attend a private institution. Id. at 7-8.
On the other end of the spectrum, the Court sanctioned the use of CTF monies for private school expenses at Interlochen Arts Academy in Interlochen, MI, because the minor child had demonstrated an extraordinary musical aptitude. The minor child could not receive the level of musical instruction commensurate with the minor’s skills and talents within a public school setting. In essence, the petitioner exhausted the available state entitlement because the public school proved lacking in its ability to prepare the minor for future obtainable ambitions. In the Interest of Minor Child: K.A.L., DOB 08/14/89, by Gary L. Lonetree, Jr. v. HCN Office of Tribal Enrollment, CV 05-66 (HCN Tr. Ct., Nov. 9, 2005) at 5-6, 9-10.
Finally, the Court, former Associate Judge Pro Tempore Tina F. Gouty-Yellow presiding, granted CTF monies to allow a seventh grade child to attend St, John’s Northwestern Military Academy in Dela-field, WI, on the basis of the child’s aspirations to become a pilot and attend a collegiate military academy. In the Interest of Minor Child: T.W., DOB 04/09/93, by Sara WhiteEagle v. HCN Office of Tribal Enrollment, CV 05-73 (HCN Tr. Ct., Dec. 29, 2005) at 5, 7-8. In doing so, the Court announced:
[It] is cognizant that prior rulings involving educational requests have been narrowly eonstrued[,] and that by entering this decision the Court is expanding *60 this area of the law. The Court believes that the prior decision(s) were issued at a time when the Nation had additional resources available to the parents regarding funding of private educational settings that are no longer available. Further, the Court contends that a quality education does more to serve the current and future needs of the child and of the Nation. It would be difficult to find a better investment of these funds than the best education for the Nation’s children.
Id. at 8. The Court later questioned the statement concerning a previously greater tribal funding availability since the former judge cited no authority for its “belief,” and respondent’s counsel later indicated that it provided no such grounds for the Court’s proposition. In the In terest of Minor Child: T.W., DOB 04/09/93, by Sara WhiteEagle v. HCN Office of Tribal Enrollment, CV 06-30 (HCN Tr. Ct., July 24, 2006) at 7 n. 2.
Within the subsequent year’s funding request submitted by Ms. Whi-teEagie, the Court articulated the following:
[T]he Court is concerned by the petitioner’s statement that she maintained no concerns with the quality of education offered by the public school system. The Court cannot condone recourse to CTF monies on the basis of an abstract educational goal. Unlike Lonetree, the minor child in the instant case did not establish a degree of excellence in a chosen scholastic field. However, the minor child did demonstrate an uncharacteristic level of commitment to a chosen profession. Also, the minor child has unquestionably thrived in the new scholastic setting.
The Court must emphasize that the case at bar presents a close question. The presiding judge would have unlikely granted the request ■when initially submitted for judicial consideration. One can easily conceive of future requests for private school expenses that only tangentially satisfy the four-prong test. The Court will conditionally grant the petitioner’s request since it does not wish to disrupt the expectations of the minor child. The Court also wants to sustain the witnessed academic improvement.
Id. at 12 (emphasis added). Moreover, the Court must not simply set aside a past judgment with which it later notes disagreement.[3] That being said, the Court is under no obligation to perpetuate seemingly flawed reasoning in future cases as Trial Court opinions do not carry precedential authority beyond actual parties to a dispute. See generally David Abangan v. HCN Dep’t of Bus., CV 01-08 (HCN Tr. Ct., July 16, 2003) at 15-19.
In those instances where the Court has granted requests, it has always required a parental contribution. WhiteEagle, CV 07-07 at 7, 12; WhiteEagle, CV 06-30 at 8, 12; Murphy, CV 06-67 at 7, 11-12; WhiteEagle, CV 05-73 at 8; Lonetree, CV 05-66 at 6. The Court maintains, “[a]s a general proposition, [that] a child should not bear the cost of providing his or her elementary or high school education.” Nakai, CV 07-62 at 10. Furthermore, the Court has stressed that a “parent must fulfill [his or] her inherent obligation to *61 provide for the basic necessities of [a] minor child.” Murphy, CV 06-67 at 11.
In the present case, the petitioner asserts three (3) reasons for wanting her minor child to attend PRWS. First, the minor child expressed a preference to attend PRWS since she had acquaintances or friends that already attended the institution. Second, the petitioner and minor child prefer the Waldorf approach toward education. Finally, the minor child contends that the educational instruction at PRWS exceeds that of the public school system, including Viroqua Area School District, which the minor child has never attended.
In Espinoza, the Court ruled that an asserted preference for a given style of education could not overcome the fact that the State offers a free education to all minors within its territorial boundaries. S.B.G. is not restricted from attending classes in the Viroqua Area School District, and must eventually transfer to public school after Eighth Grade unless the petitioner pursues home schooling or some other available option. Also, the competency of the Viroqua Area School District is not even in question in the instant case.[4] The Court consequently cannot grant a release of CTF funds on the grounds that the minor child’s friends attend PRWS. To do otherwise would allow seemingly unrestricted access to a CTF for private schooling purposes despite the dear presence of a public entitlement to schooling at no cost.
Regardless, the Court recognizes that S.B.G. has been attending classes at PRWS since the fall semester, and an outstanding bill exists with the institution. The petitioner submitted her Petition on January 21, 2009, so the Court will release CTF monies to cover a pro rata share of the tuition from such date until the issuance of this judgment, i.e„ seventy (70) days. The petitioner must submit appropriate documentation to receive such assistance, and the Court shall maintain an open case file pending its receipt.
The Court has permitted similar access to CTF monies in the past. Essentially, the Court has recognized the obvious presence of an educational and welfare concern and that given minors have already received the benefit. Lonetree, CV 06-26 at 11. In Lonetree, the petitioner requested assistance with an outstanding balance derived from enrollment in past academic years. Subsequent financial hardship caused severe difficulty in satisfying this obligation, and the Court released the total amount of $3,387.58 from the CTF accounts of twro (2) minor children in connection with their attendance at Gallup Catholic School during the preceding four (4) academic years. The Court, however, denied prospective tuition payments for the next academic year, which the petitioner had sought by filing a Petition during the *62 intervening summer and not during the school year.[5] Id. at 6-8.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure [hereinafter HCN R.App. P. J, specifically Rides of Appellate Procedure, Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within sixty (60) calendar days after the day such judgment or order was rendered, file with the Supreme Court Clerk, a Notice of Appeal from such judgment or order, together with a filing fee as stated in the appendix or schedule of fees” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.(” HCN R. Civ. P. 61.
IT IS SO ORDERED this 1st day of April 2009, by the Ho-Chunk Nation Trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

. The Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.) permit the Court to serve the Complaint upon the DOJ when the plaintiff/petitioner names as a party a unit of government or enterprise. HCN R. Civ. P. 27(B).

. At the Hearing, the petitioner staled that PRWS indicated a willingness to accept $2,000.00 as payment for its variable tuition, but a subsequent filing indicates a 2008-09 academic tuition in the amount of $5,800.00. Am. Answer, Attach. I; LPER at 5, 10:10:42 CST.

. The Court regards the initial WhiteEagle decision as possessing res judicata effect amongst the parties, provided that the petitioner continues to assert essentially the same claim in subsequent incarnations of the case. See Michael Sallaway et al. v. HCN Election Bd. et al., CV 07-47 (HCN Tr. Ct., June 27, 2007) at 11-12, aff'd, SU 07-11 (HCN S.Ct., June 29, 2007).

. Although not seemingly relevant here, the Court has granted CTF monies for private tutoring and instruction for children demonstrating significant difficulty in public school. See, e.g., In the Interest of Minor Child: M.W., DOB 07/09/95, by Melody Whiteagle-Fintak v. HCN Office of Tribal Enrollment, CV 07-23 (HCN Tr. Ct., June 29, 2007). In Whiteagle-Fintak, the Court approved the minor child's participation in a four-month program conducted by Sylvan Learning Systems, Inc. The public school did not offer an on-site tutoring program, and the minor already attended tutoring sessions offered by the Nation. The minor child could not receive the same degree of personalized school instruction due to being elevated out of a Special Education curriculum. Id. at 5-7, 10; see also In the Interest of Minor Child: E.J.B., DOB 05/19/99, by Mrya Jo Price v. HCN Office of Tribal Enrollment, CV 08-60 (HCN Tr. Ct., Oct. 31, 2008).

. The Court has encountered several occasions where the minor child has already enrolled in private school prior to receiving a judicially sanctioned release of CTF monies. In one such instance, the Court “expressfed] a word of caution regarding preemptively committing CTF monies absent judicial approval.” WhiteEagle, CV 07-07 at 12. The Court continued: “The petitioner accepts a substantial risk by contractually obligating funds that may not be forthcoming, and the Court instructs the petitioner to refrain from such a practice in the future.’’ Id.